IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FOLEY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11-CV-01080-FJG |
| | ) |
| MIXING & MASS TRANSFER | ) |
| TECHNOLOGIES, LLC | ) |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HDR ENGINEERING, INC., | ) |
| | ) |
| Third –Party Defendant | ) |

**ORDER**

Currently pending before the Court is Defendant Mixing and Mass Transfer Technologies, LLC's ("M2T2") Motion for Summary Judgment (Doc. Nos. 135 & 138).

**I. BACKGROUND**

On January 24, 2006, Foley Company and Unified Government of Wyandotte County, Kansas City, Kansas ("UG") entered into a contract ("Contract"), pursuant to which Foley was to serve as the general contractor for a project known as the Kaw Point Wastewater Treatment Plant Improvements Project I.D. 6176 ("Project"). The Contract required that Foley complete all work specified by the Contract documents within three hundred sixty-five (365) calendar days after the date established in the Notice to Proceed, unless the period for completion was extended. Pursuant to the Contract, Foley was to pay liquidated damages of Two Thousand and 00/100 Dollars ($2,000.00) per day for each calendar day thereafter. The Notice to Proceed was

issued by UG on February 13, 2006.  As such, the date for completion of all work was established as February 12, 2007.  (Doc. Nos. 138, 151, & 185).

Foley's scope of work under its Contract included Section 13180, Retrofitted Oxygenation System ("Oxygenation System"), of the Technical Specifications for the Project.  Foley entered into a subcontracting or purchase order agreement ("Purchase Order") with Mixing & Mass Transfer Technologies, LLC ("M2T2") with respect to the Oxygenation System.  In the Purchase Order, M2T2 agreed to pay liquidated damages to Foley if M2T2 did not meet agreed upon dates in the delivery schedule and Foley had to pay liquidated damages to UG.  Additionally, the Purchase Order made Section 13180 of the Specifications for the Project a part of the Purchase Order.  Section 13180 provides for performance warranty liability, to be exercised in the event that M2T2 or its equipment failed to attain or meet technical performance criteria or field testing requirements.  Specifically, the Performance Warranty Liability provision, paragraph 3.8 states,

> A. In the event the oxygenation system fails to meet the shop and field acceptance performance warranties described previously, the Owner [UG] has the option to accept the oxygen dissolution subsystem with liquidated damages up to the limits as specified or to reject it and require modification and/or replacement so as to meet the performance requirements.  After modification or replacement, the Contractor shall retest the system as specified for the original testing.  The Contractor shall pay for the retest of the system and any subsequent tests required, including additional Owner and Owner's representative (Engineering) costs associated with retesting.

****

    C. Notwithstanding any provisions of the preceding subparagraphs, in no event shall the OSS [M2T2] be liable for combination of modifications to the system and liquidated damages as specified or any other damages under or caused under the preceding provisions of Paragraph 3.8, in excess of the aggregate total of $500,000.

    D. Damages listed above for failure to meet performance warranties for the oxygenation dissolution subsystem shall be paid/incurred in addition to any liquidated damages incurred by the Contractor as defined elsewhere in the Contract Documents.

(Doc. Nos. 138, 151, & 185).

In the Spring of 2007, UG's Engineer notified M2T2 of problems surrounding the Oxygenation System. M2T2 commenced performance testing. UG rejected the equipment and required modification. M2T2 performed the warranty work in accordance with Specification 13180 at no additional cost to UG. The UG required that after any modification/replacement of the Oxygenation System, that the system be retested. During October or November of 2009, M2T2 conducted a second performance test. On December 28, 2009, M2T2 transmitted the final performance test data to Foley. On February 1, 2010, UG accepted the results of the performance testing. (Doc. Nos. 138, 151, & 185).

On June 4, 2010, by letter, UG advised Foley that the Project was completed on February 1, 2010. According to the June 4, 2010 letter, there was a delay in completion of 1, 084 days, and at a daily liquidated damages rate of $2,000.00 per day, the amount

owed by Foley to UG on account of liquidated damages was Two Million One Hundred Sixty Eight Thousand and 00/100 Dollars ($2,168,000.00). Pursuant to discussions between Foley and UG aimed toward amicably resolving the issue of liquidated damages, UG agreed to reduce the liquidated damages assessment to a period of 283 calendar days and an amount of Five Hundred Sixty Six Thousand and 00/100 Dollars ($566,000.00). Foley and UG executed a deductive change order to the Contract for Five Hundred Sixty Six Thousand and 00/100 Dollars ($566,000.00). (Doc. Nos. 138, 151, & 185).

Subsequently, on October 21, 2011, Foley filed the present action claiming that all conditions precedent to Foley's right to recovery from M2T2 have been met to Foley, or have been waived, released, or excused by M2T2. Count I asserts breach of contract for M2T2 allegedly failing to meet the dates set forth in the delivery schedule and thus, Foley contends it was damaged for $566,000. Count II asserts breach of contract in that since M2T2 caused Project delay Foley was assessed liquidated damages by UG. Foley states M2T2 is responsible for these damages. In Defendant M2T2's Answer, M2T2 filed a Counterclaim against Foley for breach of contract for failure to pay the remaining balance on the account. (Doc. Nos. 138, 151, & 185).

On May 16, 2013, M2T2 filed the present Motion for Summary Judgment (Doc. No. 135 & 138).

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law

will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

Under Missouri law, the elements that must be proven in order to recover for breach of contract are "(1) existence of an enforceable contract between [the parties to the action], (2) that mutual obligations had arisen under its terms, (3) that [the party or parties being sued had not performed obligations imposed by the contract and (4) that [the party seeking recovery] was thereby damaged." Superior Ins. Co. v. Universal Underwriters Ins. Co., 62 S.W.3d 110, 118 (Mo. Ct. App. 2001) (quoting Trimble v. Pracna, 51 S.W.3d 481, 506 (Mo.App. 2001)).

The rules of contract interpretation presume that a written agreement contains the intention of the parties. Cargo Protectors, Inc. v. Am. Lock Co., 92 F.Supp.2d 926, 932 (D. Minn. 2000). "The court is to examine the "four corners" of the document to

discern the intention of the parties." Id. The contract is to be considered as a whole, and if the language is unambiguous, then the contract shall be interpreted without resorting to inclusion of extrinsic evidence. Id. "Courts should avoid giving an interpretation to a provision that will nullify the clear and unambiguous language of another provision." Id.

## III. DISCUSSION

M2T2 states that it is entitled to summary judgment on Counts I and II of Foley's Complaint because it did not fail to perform its obligations under the contract documents and Foley has suffered no damages or liquidated damages. First, the rules of contract interpretation mandate consideration of the Field Testing Performance, Performance Warranty, and Performance Warranty Liability provisions of the contract between Foley and M2T2. After M2T2 failed the first performance test, by its own contract, UG had to make a choice between acceptance of the equipment with liquidated damages or rejection and modification. UG choose rejection. Accordingly, all delay associated with the performance of the contract by M2T2 occurred during periods when UG demanded that M2T2 perform under the warranty provisions of Section 13180 Technical Specifications and thus, M2T2 was not subject to liquidated damages. Holding M2T2 liable for liquidated damages would allow UG to essentially "double-dip" for its remedies. Second, M2T2 claims it performed its duties pursuant to the terms of the Purchase Order or Section 13180 by modifying or replacing the equipment to UG at no charge. Therefore, M2T2 was not in breach of its contract. Third, Foley suffered no damages or liquidated damages as a result of the alleged breach of contract because pursuant to the terms of the Purchase Order and paragraph 3.8(a) of Section 13180,

Foley agreed to pay the costs it now seeks to recover.  These costs are not identified as liquidated damages, but rather engineering costs.  The Purchase Order between Foley and M2T2 only provides for M2T2's payment of liquidated damages assessed against Foley.  Therefore, M2T2 is not liable to Foley.  Finally, M2T2 states that it is entitled to summary judgment on Count I of its Counterclaim against Foley because M2T2 fulfilled their obligations under the Purchase Order and Section 13180.  These charges stem from work contracted and do not include the warranty or replacement costs of M2T2.  Therefore, these charges are due and owing. (Doc. Nos. 135, 138, & 185).

Foley states that M2T2's argument lacks merit.  First, M2T2 breached the Purchase Order and is liable for liquidated damages for delay consistent with that portion of the Purchase Order where M2T2 agreed to pay Foley liquidated damages if: (1) M2T2 failed to meet the delivery schedule and (2) Foley was required to pay liquidated damages to UG.  It is undisputed that both events occurred here.  Second, even if Foley's assessment of liquidated damages was not supported by the provisions of the Purchase Order, Paragraph 19 of the Terms and Conditions which states that M2T2 shall indemnify Foley for any claims made against Foley for delay supports an award of liquidated damages.  Third, since Foley's obligations under the Contract passed to M2T2 and Foley agreed to pay for the re-test of the Oxygenation System and any subsequent test required, including additional engineering costs associated with retesting under paragraph 3.8(A), M2T2 is responsible.  Fourth, paragraph 3.8(D) defeats M2T2's argument in that it allows UG to assess both performance related liquidated damages and delay related liquidated damages.  Finally, to the extent the Court concludes that one or more of the provisions of the Purchase Order (including the

Section 13180 Technical Specifications) supports M2T2's motion, there are clearly other clauses that support Foley's interpretation of the Purchase Order. Resolution of the ambiguity is for the jury. (Doc. No. 151).

In this case, given the Purchase Order, it is clear that it was the intention of Foley and M2T2 to be bound by the Contract and/or Section 13180 Technical Specifications. Jim Carlson Const., Inc. v. Bailey, 769 S.W.2d 480, 481 (Mo. Ct. App. 1989) ("[M]atters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in haec verba."). However, reading paragraph 3.8(C) and paragraph 3.8(D) of Section 13180 in conjunction with the Purchase Order makes clear that Section 13180 provides for liquidated damages under the performance warranty in addition to delay-related damages incurred as defined elsewhere in the Contract. It is undisputed that M2T2 was delayed in the delivery schedule. As such, granting M2T2 summary judgment on this point would be improper. Given the above, granting M2T2 summary judgment on its Counterclaim would also be improper.

## IV.   CONCLUSION

For the aforementioned reasons, M2T2's Motion for Summary Judgment (Doc. No. 135) is **DENIED**.

**IT IS SO ORDERED.**

Date:  August 1, 2013                                **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri                                Fernando J. Gaitan, Jr.
                                                     Chief United States District Judge