# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| FOLEY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:11-CV-01080-FJG |
| ) | |
| MIXING & MASS TRANSFER ) | |
| TECHNOLOGIES, LLC ) | |
| ) | |
| Defendant/Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| HDR ENGINEERING, INC., and ) | |
| R.E. PEDROTTI CO., INC., ) | |
| ) | |
| Third –Party Defendant ) | |
| ) | |
| v. ) | |
| ) | |
| HDR ENGINEERING, INC., ) | |
| ) | |
| Fourth-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DELICH, ROTH, & GOODWILLIE, P.A., ) | |
| ) | |
| Fourth-Party Defendant. ) | |

## **ORDER**

Currently pending before the Court is Third-Party Defendant R.E. Pedrotti Company, Inc.'s ("Pedrotti") Motion for Summary Judgment (Doc. No. 133).

**I.    BACKGROUND**

On January 24, 2006, Foley Company and Unified Government of Wyandotte County, Kansas City, Kansas ("UG") entered into a contract ("Contract"), pursuant to

which Foley was to serve as the general contractor for a project known as the Kaw Point Wastewater Treatment Plant Improvements Project I.D. 6176 ("Project"). The Contract required that Foley complete all work specified by the Contract documents within three hundred sixty-five (365) calendar days after the date established in the Notice to Proceed, unless the period for completion was extended. Pursuant to the Contract, Foley was to pay liquidated damages of Two Thousand and 00/100 Dollars ($2,000.00) per day to UG for each calendar day thereafter. The Notice to Proceed was issued by UG on February 13, 2006. As such, the date for completion of all work was established as February 12, 2007. (Doc. No. 1).

Foley's scope of work under its Contract included Section 13180, Retrofitted Oxygenation System ("Oxygenation System"), of the Technical Specifications for the Project. Foley entered into a subcontracting or purchase order agreement ("Purchase Order") with Mixing & Mass Transfer Technologies, LLC ("M2T2") with respect to the Oxygenation System on or about April 14, 2006. The Purchase Order provided that M2T2 would pay liquidated damages to Foley if M2T2 did not meet agreed upon dates in the delivery schedule attached to the Purchase Order and Foley had to pay liquidated damages to UG. (Doc. No. 1).

Pedrotti operated under two contracts with respect to the Project: one contract between Pedrotti and Foley to provide instrumentation and computer modifications to the Plant ("Foley Contract") and one between Pedrotti and M2T2 to provide computer programming services with respect to the Project ("M2T2 Contract"). (Doc. No. 134, 145, & 178).

M2T2 failed to meet the agreed upon dates and the Project was delayed. On June 4, 2010, by letter, UG advised Foley that the Project was completed on February 1, 2010, which was the date on which the performance testing on the Oxygenation System required by Section 13180 was approved. According to the June 4, 2010 letter, there was a delay in completion of 1, 084 days, and at a daily liquidated damages rate of $2,000.00 per day, the amount owed by Foley to UG on account of liquidated damages was Two Million One Hundred Sixty Eight Thousand and 00/100 Dollars ($2,168,000.00). Foley negotiated a final settlement of liquidated damages owed by Foley to UG on the Project in the amount of Five Hundred Sixty Six Thousand and 00/100 Dollars ($566,000.00). Foley and UG executed a Settlement Agreement on June 30, 2011 which states in part that "the delay in completion of the Project was caused by Foley's Supplier M2T[2], with whom the Unified Government is not in privity of contract." (Doc. Nos. 1, 134, 145, & 178).

Subsequently, on October 21, 2011, Foley filed the present action claiming that all conditions precedent to Foley's right to recovery from M2T2 have been met to Foley, or have been waived, released, or excused by M2T2. As such, Foley asserts two breach of contract claims against M2T2 for recovery of the Settlement Agreement amount. On April 25, 2012, M2T2 filed its Second Amended Answer, wherein it asserts a Counterclaim against Foley for breach of contract for failure to pay the remaining balance on the account. M2T2 also filed a Third-Party Complaint against Pedrotti for equitable or non-contractual indemnity. Specifically, M2T2 asserts the following:

> Pedrotti was retained by the [UG] as the sole source provider of certain software and systems integration for work undertaken at the Plant. In this

role, Pedrotti had the professional obligation and duty to evaluate the necessary improvements needed to software and operations control systems for the Oxygenation System, prepare any necessary modifications or updates to software, and prepare operations and maintenance manuals, as well as training modules for the Project. Both M2T[2] and Pedrotti had the obligation to supply the professional and technical expertise in accordance with their respective contracts and ensure that their respective obligations undertaken at the Plant were performed in a timely manner. Pedrotti failed to fulfill its obligations in a timely manner, which resulted in Project delay. Foley now seeks liquidated damages from M2T[2] resulting from Project delay caused, in part, by Pedrotti.

(Doc. Nos. 1 & 51).

On May 16, 2013, Pedrotti filed the present Motion for Summary Judgment (Doc. Nos. 133 & 134).

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth

specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

To establish a claim for non-contractual indemnity, which is also referred to as common law indemnity or equitable indemnity, the Plaintiff must show: (1) the discharge of an obligation by the Plaintiff; (2) the obligation discharged by the Plaintiff is identical and co-extensive to an obligation owed by the Defendant; and (3) the discharge of the obligation by the Plaintiff is under such circumstances that the obligation should have been discharged by the Defendant, and (4) Defendant will be unjustly enriched if the Defendant does not reimburse the Plaintiff to the extent that the Defendant's liability has been discharged. Beeler v. Martin, 306 S.W.3d 108, 111 (Mo.App. 2010); See State ex rel. Manchester Ins. and Indem. Co. v. Moss, 533 S.W.2d 772, 774-75 (Mo. 1975); See also State ex rel. Laclede Gas Co. v. Godfrey, 468 S.W.2d 693, 698 (Mo.App. 1971). A party asserting equitable indemnity is not asserting that a contractual right to indemnity exists; rather such a party is asserting that, given the special nature of the case's circumstances, equity demands that one party indemnify the other. Am. Nat'l Prop. and Cas. Co. v. Jester, 358 S.W.3d 75 (Mo.App. 2011).

## III. DISCUSSION

Pedrotti states that summary judgment should be granted in its favor. First, no genuine issue of material fact exists because M2T2 has not presented or elicited in discovery, or otherwise, any facts to support its erroneous allegation that Pedrotti is responsible, in part, for any delay on the Project. The record before the Court demonstrates the complete opposite. The record demonstrates the following: Pedrotti fully performed all obligations under both the Foley Contract and the M2T2 Contract on the Project; Pedrotti fulfilled all of its obligations under the Foley Contract and M2T2 Contract in a timely manner; Pedrotti was promptly and fully paid upon its completion of all obligations under both the Foley Contract and M2T2 Contract; any delay on the Project was caused by M2T2 and no other party; and all damages Foley is seeking in this lawsuit were the result of M2T2's delay and not caused by any other party. Second, M2T2 has not satisfied – and cannot satisfy – the elements of an equitable indemnity claim in that M2T2 is unable to demonstrate that Pedrotti will be unjustly enriched in the event M2T2 is required to reimburse Foley for the liquidated damages Foley paid to UG resulting from M2T2's Project delays. The Settlement Agreement specifically states that the delay was caused by M2T2. Furthermore, in Foley's Responses to Third-Party Defendant HDR's First Request for Admissions, Foley acknowledged that all of the damages that Foley is claiming in its lawsuit against M2T2 were caused by M2T2 and no other party. Accordingly, Pedrotti states that summary judgment should be granted in its favor. (Doc. Nos. 134 & 178).

M2T2 states that Pedrotti's argument is misplaced. First, Pedrotti's failure to provide sufficient staff and untimely providing portions of operation and maintenance

manuals for the Retrofitted Oxygenation System caused Project delay. Pursuant to the terms of the technical specifications for the computer system integration, Pedrotti was to provide two programmers on the Project. Pedrotti, however, only provided one programmer for the Project. Due to other work obligations, this programmer was, at times, unavailable to meet or discuss integration of the Oxygenation System with M2T2's representative, although this coordination was critical for timely performance. Further, Pedrotti was required to provide certain materials for completion of the operation and maintenance manuals for the Oxygenation System. Despite M2T2's request to provide these materials, Pedrotti delayed in ultimately providing them. This was done even though Pedrotti was informed that the failure to provide this information could result in Project delay. Second, Pedrotti would be unjustly enriched if M2T2 is compelled to pay Foley. As shown by the foregoing, Pedrotti did engage in certain acts or omissions which resulted in Project delay. Pedrotti's reliance on Foley's Admissions is insufficient to overcome its burden of establishing that a genuine issue of material fact exists here. Pedrotti's reliance on Foley's characterization of the culpability of those with co-extensive duties to complete the Project within the contracted timeframe is misplaced and attempts to remove that duty from the finder of fact and vest that determination with a party to the litigation. This is clearly inappropriate. Accordingly, M2T2 maintains that Pedrotti caused Project delay and that should M2T2 be required to assume liquidated damages, Pedrotti will be unjustly enriched. As such, M2T2 states Pedrotti should not be granted summary judgment. (Doc. No. 145).

Pedrotti responds that M2T2's reliance on Section 16900 of the technical specifications is misplaced. Section 16900 of the technical specifications sets forth the

requirements which must be met by the System Integrator in order to be selected by the Contractor as the System Integrator for the Project. It is devoid of any reference to a particular number of programmers that must be available on the Project and thus, Pedrotti was in full compliance. Further, the programmer's unavailability was the result of M2T2's lack of organization on this Project and not the result of delay on the part of Pedrotti. Finally, Pedrotti timely prepared and provided to M2T2 all portions of operation and maintenance manuals prior to training and in accordance with the Plans and Specifications for the Project. As such, Pedrotti states it should be granted summary judgment. (Doc. No. 178).

The Court hereby **DENIES** Pedrotti's Motion for Summary Judgment (Doc. No. 145). First, admissions can only be used against the party making the admission. See Jones v. Nat'l Am. Univ., 608 F.3d 1039, 1045 (8th Cir. 2010); See also United States v. Heppner, 519 F.3d 744, 750-51 (8th Cir. 2008). Therefore, Foley's admissions that it contemplated Pedrotti's contribution to the delay or damages on the Project is irrelevant and thus, a genuine issue of material fact still exists on this point. Second, a genuine issue of material fact still exists as to whether Pedrotti's staff was made sufficiently available and whether operation and maintenance manuals were timely provided in order to avoid Project delay.

## IV. CONCLUSION

For the aforementioned reasons, Pedrotti's Motion for Summary Judgment (Doc. No. 133) is **DENIED**.

Date: August 6, 2013      **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri      Fernando J. Gaitan, Jr.
     Chief United States District Judge